## W. F. POTTS SON & CO., Inc., v. COCHRANE et al.

### No. 6477.

Circuit Court of Appeals, Fifth Circuit.

June 11, 1932.

See, also, 47 F.(2d) 1026.

Shutts & Bowen, Crate D. Bowen and Joseph F. McPherson, all of Miami, Fla., for appellant.

Marshall B. Wood and A. L. Rankin, both of West Palm Beach, Fla., for appellees.

Before BRYAN, FOSTER and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

On August 27, 1928, W. F. Potts Son & Co. brought its suit as holder of $3800 of bonds of series E, one of six separate bond issues executed by the Mortgage Investment Company, A, B, C, D, E, and F, each issue

covering entirely distinct properties, and each secured by separate collateral trust deed. That suit as originally brought made the Palm Beach Guaranty Company and its officers and directors the sole defendants. It was alleged that the mortgage company, which issued the bonds, was a mere fictional creature invented and set on foot by the Palm Beach Company, guarantor of the bonds, for the purpose of working a fraud.

Except as to series E, no claim of lien was made. A supplemental petition filed November 24, 1928, named as additional defendants the Mortgage Investment Company and Cunningham, custodian of the bankrupt Palm Beach Guaranty Company. No process was issued on this petition, and neither the investment company nor its trustee appeared. The petition recited that since the filing of the bill a severe storm had occurred, causing great damage to the property of the trusts, and requiring immediate administration for their protection. It prayed the appointment of a trustee for each of the trusts, and a receiver, and upon this prayer first a temporary, later a permanent, receiver was appointed. The receiver immediately took into his possession all of the collateral, assumed the management and charge of the properties, and until June, 1931, was under the orders and direction of the court actively in charge of them.

On April 22, 1929, Cochrane and Himes, who had been appointed by a state court successor trustees of the bond issues A, B, C, D, and F, filed their intervention pro suo inter esse, seeking a turn-over order for the collateral securing those issues, alleging that "the possession of the receiver is wrongful in that it affirmatively appears that the original owner does not own, hold or claim any interest in any of the bonds except those known as Series E." This application, vigorously opposed by plaintiff, was on July 25, 1929, denied by the trial court. Cochrane and Himes in a leisurely way prosecuted their appeal from that order. The appeal, begun on October 24, just one day before the time for it had expired, after an unhurried rate of progression which the record does not explain, of more than a year, no expedition being asked or attempted, came on for hearing in this court, and on March 13, 1931, the order was reversed and the cause remanded for further proceedings not inconsistent with the opinion. Cochrane et al. v. W. F. Potts Son & Co. (C. C. A.) 47 F.(2d) 1026. On May 22, 1931, Cochrane and Himes renewed their application for a turn-over order, and asked

an accounting by the receiver as to all moneys and properties he had received and disbursed or surrendered during the two and a half years he had been administering the property, and the taxation against plaintiff as costs of all costs and expenses of the receiver in the administration of the five trusts, A, B, C, D, and F. It thus put in issue a matter not presented on the first appeal, the nature and extent of plaintiff's responsibility for the receivership, and the costs and expenses of its administration. On the same day the petition was filed the court entered its order directing the receiver to deliver to the trustees of those trusts all of the properties in his possession. From that order there was no appeal. It is not before us.

On May 29 the receiver filed his final report, showing all receipts and disbursements, and that a large part of the money had been expended on the upkeep of the property for repairs, additions, taxes, insurance, etc. and for fees and costs in foreclosing on collateral and reducing the property of the trusts to possession. On June 5 Potts filed exceptions to the report, and on June 12 there was filed in the cause the "reply of plaintiff to the motion to tax costs against plaintiff and the receiver's report." On that same day the order from which this appeal is taken was entered. It recited prior proceedings in the cause, the administration by the receiver of the properties, the collection by him of moneys belonging to each of the several bond issues and the disbursement of such moneys, the assumption of jurisdiction of the properties by the court's receiver at the instance of Potts, that the court had never had jurisdiction of said properties, and that all the moneys disbursed except for taxes should be taxed as costs against Potts. It found Potts liable to the trustees for all the amounts disbursed by the receiver, and rendered judgment against it for more than $50,000.

The record does not show that any action was taken by the court upon Potts' exceptions, or its reply to the report of the receiver. The order recites that the court considered evidence, but there is no evidence in the record except the report of the receiver, and nothing to show that there was any other evidence taken.

Potts urges here (1) that, if the court was without jurisdiction to take possession of the properties, it was necessarily without power to render any judgment in the cause against it on account of such possession taken; (2) that, if it was liable for any amount to the trustees, that liability must be deter-

mined in a plenary suit, and not by motion in the cause; and (3) that, if there was power in the court to proceed to judgment, the judgment was erroneous and unjust in charging against plaintiff the disbursements which inured directly to the benefit and enrichment of the five trusts, or some of them.

Appellees reply that here is no failure of jurisdiction of a federal court as such, through want of the requisite diversity or the jurisdictional amount. Lion Bonding & Surety Co. v. Karatz, 262 U. S. 85, 43 S. Ct. 480, 67 L. Ed. 871; Id., 262 U. S. 640, 43 S. Ct. 641, 67 L. Ed. 1151; Smyth v. Asphalt Belt Railway Co., 267 U. S. 326, 45 S. Ct. 242, 69 L. Ed. 629; Pusey & Jones v. Hanssen, 261 U. S. 500, 43 S. Ct. 454, 67 L. Ed. 763; Burnrite Coal Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002. They say this is a case where neither the appointment of the receiver nor the jurisdiction of the court over him or the cause is in question; that the difficulty here grows out of the want of equitable, rather than federal, jurisdiction, through the attempted administration of properties under a bill as to them deficient in equity, and that in such case the court has the fullest authority to proceed in the matter of taxing costs and disbursements as may appear to it just and right. They say further, however, that, if it be considered that the case is one in which there was a complete lack of jurisdiction, the court, having at the instance of appellant taken hold of the properties to administer them, has the power which it may exercise, by a simple motion in the cause, Northwestern Fuel Co. v. Brock, 139 U. S. 216, 11 S. Ct. 523, 35 L. Ed. 151, to require the one at whose instance jurisdiction has been wrongly asserted, to make him whole whose possession has been wrongfully disturbed, Beach v. Macon Grocery Co. (C. C. A.) 125 F. 513; McIntosh v. Ward (C. C. A.) 159 F. 66; Hawes v. First Nat. Bank of Madison (C. C. A.) 229 F. 51; Fryer v. Weakley (C. C. A.) 261 F. 509; Noxon Chem. Prod. Co. v. Leckie (C. C. A.) 39 F. (2d) 318; People's Savings & Dime Bank v. Williams Drop Forging Co. (D. C.) 42 F. (2d) 292; Arkadelphia Milling Co. v. St. Louis Southwestern R. Co., 249 U. S. 134, 39 S. Ct. 237, 63 L. Ed. 517; Baltimore & O. R. Co. v. U. S., 279 U. S. 781, 49 S. Ct. 492, 73 L. Ed. 954.

Appellant argues that, though where the court has wrongfully taken hold of properties either without jurisdiction or merely erroneously, it has the power to compel those who have received any of it under such wrongful orders to restore what they have received, this power is properly exercised only against those who have received money or property, and may not be exerted against a plaintiff who, though without right, yet in good faith and without malice has caused the receivership, except for such amounts as are left owing when the remedy of restitution has been exhausted. They argue also that, while the motion in the cause was for taxation of the costs and expenses of the receivership, the judgment did not follow the motion, but was in reality a judgment for damages. They say finally that at all events the recovery against plaintiff should have been limited as to each trust to the actual losses caused to those trusts by the receivership, after crediting the administration with all reasonable expenditures made by the receiver which inured to the benefit of the trusts, or which, whether they inured to their benefit or not, the rightful trustees would have been compelled to expend. They say finally that they have a right, as between themselves and the receiver, to have an adjudication of the correctness of his accounts and to hold him and his sureties responsible for all expenditures not legally and properly made. They pray that the cause be reversed and remanded for a full hearing and determination of these issues.

Appellees insist that all these matters of accounting present questions of fact which have been fully heard in the court below, and, there being no statement of the evidence in the record, except the receiver's report, it must be presumed that they were correctly decided.

While we agree with appellees that the court had the power, and within equitable limits the discretion, to tax the costs and disbursements of the receiver against the plaintiff who has caused the administration, we agree with appellant that the decree as entered is not in accordance with the equitable principles applicable in the case. Appellees treat the matter too much as though this were a suit for the wrongful and forcible taking of property by plaintiff or its agents. They overlook the fact that, though it is true that one who invokes without sufficient equitable grounds the administration by a receiver of the property of another may be in a proper case held accountable for the costs and expenses of the receivership and for losses which the receivership has visited upon the property, the appointment of a receiver is at last the court's appointment; the administration, its administration. Atlantic Trust

Co. v. Chapman, 208 U. S. 371, 28 S. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155; Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 37 L. Ed. 815. We think it perfectly clear that in a case like this, where there was no malice nor wrongful purpose, and only an effort to conserve property in which plaintiff believed, though it did not show, it was interested, the question of its liability should be considered and adjudged from the standpoint of working as little hardship as may be, plaintiff in the end to be held liable for only the actual losses which its mistaken course has caused.

Especially is this so in view of the fact that the receivership was undertaken in an emergency, and, though appellees did by intervention seek to obtain possession of the property and by appeal from the order make their intervention good, they did not in the intervention, nor in any other way, make complaint of, or object to, the receiver's making necessary expenditures for the protection of the property, nor, pending the appeal which they conducted without expedition and in a leisurely way, did they make any effort to check, control, or prevent expenditures made necessary in the administration and conservation of the property.

Cases which illustrate the concern which courts have in avoiding harsh and inequitable results in the matter of costs and expenses of receiverships, instituted and conducted in good faith, though without legal grounds, and the power which courts have to impose receivers' charges either upon the fund or upon the unsuccessful plaintiff, are Harkin v. Brundage, 276 U. S. 57, 48 S. Ct. 268, 72 L. Ed. 457; Burnrite Coal Co. v. Riggs, 274 U. S. 209, 47 S. Ct. 578, 71 L. Ed. 1002. It is clearly shown by the evidence that the administration of this property was undertaken by the court under circumstances amounting almost to a public calamity; that it was continued from the time it was taken in charge for nearly six months before any effort was made by those interested in the trusts to reclaim the property. That the matter was then taken up by petition in the cause, asking, indeed, for restitution of the property, but not complaining of the expenditure of funds for its maintenance and preservation; that, after judgment against interveners without any apparent effort made for expedition of the cause, or request that moneys be not expended on the property for its care, after more than eighteen months the appeal was brought before this court for disposition; that during the whole period, nearly three years, during which the receiver had charge of the property administering it, the receiver undertook to keep the property up and protect and preserve it; that from the proceeds in his hands he paid taxes which, indeed, the court allowed, repairs, insurance, additions to the property, costs of suits foreclosing on and reducing the properties to possession, and various other expenses which, on the face of the receiver's report, were proper and necessary for the protection of the property, and were expenditures which the owner should not have had the benefit of without making full allowance for them.

■■ The matter standing thus, when, as interveners had a right to do, upon the reversal of the order they moved in the cause for the restoration of the property, and to make them whole from losses sustained as the result of the administration, Northwestern Fuel Co. v. Brock, 139 U. S. 216, 11 S. Ct. 523, 35 L. Ed. 151, the District Court should have, upon the issues joined, fully canvassed the situation from the standpoint of determining where the equities lay to adjudge accordingly. Such a proceeding is purely equitable; it should have been decided upon equitable grounds. Each case of this kind rests upon its own facts. In each such case the decree, one in which equity disposes of an awkward situation arising, not from intentional fault on the part of plaintiff, but from error of judgment, should be arrived at with the overruling purpose in mind to protect from loss an owner of the seized fund who has not so acquiesced in its administration as to make it equitable to charge the fund with its expense; but, since protection and not advantage is the end desired, the plaintiff causing the receivership may not be charged with those disbursements which have inured to the benefit of the fund, or which, whether resulting in actual benefit or not to it, do not represent losses because the fund would have had to pay them if administered by the rightful owners.

■ On such hearing plaintiff should, as between it and the receiver, have also the same right, but no more, to make objections to the receiver's accounts and charges that it would have had if the receivership had been legally instituted, for the case as between it and the receiver stands as to the right of the receiver to make disbursements and charges just as though the receivership had been properly instituted. Of course, the matter stands differently as to the payment by the plaintiff of the proper costs and charges of the receiver for which the fund may not be held, for,

plaintiff having caused to be instituted a receivership, in which the receiver may not charge the fund in his hands, it must itself pay those charges.

On such hearing, each trust should have charged to it all expenses incurred by the receiver which the court finds have inured to its benefit, or it would have had to make had the trust not been taken over by the receiver. As to moneys of one trust expended on the other, the same principle of accounting and adjustment should obtain, with the end in view throughout that plaintiff shall be ultimately held to pay to each trust the actual losses which as the result of the receivership it has sustained. For, though we think the case does not present such acquiescence in the receivership as would justify the court in charging against the funds the entire expense of the receivership, we think it perfectly plain that there should be charged against each trust such part of the receiver's disbursements as the evidence shows either inured directly to its benefit, or, whether inuring to its benefit or not, that those rightfully in charge of it would have had to pay, leaving for plaintiff to pay to each trust only the amount of its actual losses.

That such a decree may upon final hearing be entered, the order appealed from is reversed, and the cause remanded for further proceedings in accordance herewith.