Inez B. MINTZER, Linwood F. Mintzer, Jr., Miriam P. Myers, Paul Becotte, Nora Becotte, Margaret Harvey Joseph Harvey, Moe Wiesenthal, Kathryn Wiesenthal

v.

ARTHUR L. WRIGHT & CO., Inc., a Corporation.

Civ. A. No. 25062.

United States District Court
E. D. Pennsylvania.

March 19, 1959.

Herbert A. Fogel, David F. Maxwell, Philadelphia, Pa., for plaintiffs.

Edwin S. Heins, Raspin, Espenshade, Heins, Erskine & Stewart, Philadelphia, Pa., for petitioner (defendant).

Frank B. Murdoch, Philadelphia, Pa., for receiver.

CLARY, District Judge.

This matter is before the Court on exceptions of Arthur L. Wright & Co., Inc. to receiver's final account and re-

port. The exceptions relate directly to the costs of the receivership, including fees of attorneys for the receiver, premium paid on receiver's bond, and accounting expenses authorized by the Court, the total amounting to $7,661.72. The respondent has also moved the Court for a turnover order of all of the property in the hands of the receiver, excluding the credits for the items above referred to.

Two problems arise in connection with the determination of the respective contentions of the parties. The initial question to be determined is whether the costs of the receivership shall be borne by those who petitioned the Court for the appointment of the receiver, or by the respondent Wright Company, which was subjected to the imposition of the receivership. If it should be determined that the petitioners are liable for the receivership costs, the further question arises as to whether the receiver must seek to exact payment of the costs directly from them, or may he satisfy his claim from the fund in his possession, thereby forcing respondent to proceed in turn against the petitioners for the receivership? The resolution of this second question entails placing the risk of the petitioners' financial responsibility upon either the receiver or respondent. This is particularly crucial since the petitioners did not file a bond for security for costs, none having been requested by the respondent company.

In discussing these problems several facts should be emphasized. This is not a case of a void receivership; nor did respondent acquiesce in the appointment. Nor is it a case where the costs in issue would have arisen in the absence of the receivership, or where the items of cost could be said to have inured to the benefit of the estate. It is, quite simply, a case in which the appointment of a receiver has subsequently been held to have been erroneous; and in which the costs giving rise to the present controversy are the necessary and direct result of the appointment. None of the principals dispute this.

■■ The first problem posed is perhaps the easier of the two. It is often stated that in the case of an improper receivership liability for the attendant costs is to be decided in accordance with equitable principles. See, e. g., Burnrite Coal Briquette Co. v. Riggs, 1927, 274 U. S. 208, 214, 47 S.Ct. 578, 71 L.Ed. 1002; W. F. Potts Son & Co. v. Cochrane, 5 Cir., 1932, 59 F.2d 375, 377; Fulp v. McCray, 8 Cir., 1927, 21 F.2d 951, 952. Notwithstanding this broad statement, it seems established that such costs will normally be charged to those procuring the improper appointment, see, e. g., Tucker v. Baker, 5 Cir., 1954, 214 F.2d 627, 632; Central West Public Service Co. v. Craig, 8 Cir., 1934, 70 F.2d 427, 435; W. F. Potts Son & Co. v. Cochrane, supra, 59 F.2d at pages 377–379; Fulp v. McCray, supra, 21 F.2d at page 952; O'Malley v. Hankins, 1936, 209 Ind. 461, 199 N.E. 558, 559; cf. Noxon Chemical Products Co. v. Leckie, 3 Cir., 39 F.2d 318, 321, certiorari denied 1930, Robb v. Noxon Chemical Products Co., 282 U.S. 841, 51 S.Ct. 22, 75 L.Ed. 747, although exceptional circumstances, not present here, may well modify the application of this general rule. See Burnrite Coal Briquette Co. v. Riggs, supra, 274 U.S. at pages 214–215, 47 S.Ct. at page 580; Palmer v. State of Texas, 1909, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435; W. F. Potts Son & Co. v. Cochrane, supra, 59 F.2d at pages 378–379. The cases relied upon by petitioners provide little support for their position. They are either cases involving properly appointed receivers, e. g., Commercial Nat. Bank in Shreveport v. Connolly, 5 Cir., 1949, 176 F.2d 1004; Bauer & Son v. Wilkes-Barre Light Co., 1922, 274 Pa. 165, 117 A. 920, 24 A.L.R. 1171, or cases in which unusual circumstances dictated modification of the general rule, e. g., Burnrite Coal Briquette Co. v. Riggs, supra (acquiescence); Palmer v. State of Texas, supra (receivership held improper due to prior valid receivership established by state court); W. F. Potts Son & Co. v. Cochrane, supra (expenses inuring to benefit of fund and those that would have

been necessary regardless of the appointment). Indeed, the Potts case expressly recognized and applied the normal rule to the remaining costs. 59 F.2d 375, 378–379.

██ Moreover, what has been stated to be the general rule would appear to be the more equitable solution; for the appointment later found to have been improper had been precipitated by the petitioners. In view of this, they should be assessed the accompanying costs.

Petitioners offer several arguments to justify placing the costs upon the respondent. They argue that it would be unfair to charge such costs to the *named* plaintiffs since the suit was also instituted on behalf of other creditors who have benefited from the action. This appears to the Court to be completely irrelevant to the question of whether the petitioners or the respondent should pay the costs.

Petitioners also contend that the finding of the Court of Appeals that respondent was negligent demonstrates that petitioners will prevail in their damage actions. Therefore, since they will eventually obtain the fund now held by the receiver, charging the costs to the fund at this time is, in effect, charging them to the petitioners. Petitioners thus attempt to show that it really does not make any difference.

The obvious answer to this argument is that since it is admitted that the costs will in any event be upon petitioners, why not place them there now? Furthermore, the argument is valid only if the successful claims equal or exceed the amount now in the fund. If they do not, the respondent would be absorbing all or part of the costs.

A more penetrating objection is that the language of the Court of Appeals did not demonstrate that petitioners will ultimately prevail, nor did it purport to do so. That is a question that will be decided in plenary suits with the attendant possibility that all, some, or none of the petitioners may prevail.

Finally, petitioners in effect advance the proposition that since the Court of Appeals found negligence, equity demands that the respondent pay the costs. It may be that petitioners' characterization of the Court of Appeals' language as a "finding of negligence" will eventually not be justified. However, assuming that such a finding exists, it does not indicate a different result. The negligence referred to relates to factors extraneous to the institution of the suit. It was not submitted as the rationale or justification for the imposition of the receivership. A trust fund theory, rejected by the Court of Appeals, was employed for this purpose. While the alleged negligence is certainly part of the factual background, the institution of the suit was nonetheless the choice of the petitioners. Since it has been found to be groundless, they should be liable for the receivership costs in the same manner that they would be liable for ordinary costs of unsuccessful litigation.

Having decided that petitioners must bear the eventual liability for the costs, the second question is reached; i. e., whether the receiver or the respondent shall assume the risk of the petitioners' financial responsibility?

The cases referred to supra did not deal with the question. It was not presented and therefore not decided. The cases that are pertinent to the problem are few, and represent a conflict in authority. Many are collected in Note, 21 Colum.L.Rev. 466 (1921). In re T. E. Hill Co., 7 Cir., 1907, 159 F. 73, 76, supports the view that the receivership costs should, in the first instance, be paid out of the property held by the receiver. Presidio Mining Co. v. Overton, 9 Cir., 1923, 286 F. 848, 852, is apparently in accord. A contrary view is expressed in Beach v. Macon Grocery Co., 5 Cir., 1903, 125 F. 513. See also, In re Hurlburt Motors, Inc., D.C.S.D.N.Y.1920, 275 F. 62, where an intermediate approach is adopted. Another case, In re Charles W. Aschenbach Co., 2 Cir., 1910, 183 F. 305, approved a ruling of the district

court that the receiver should proceed against the petitioners for the costs; but recognized that the resolution of the question was a matter within the discretion of the court.

Under the authorities, it seems that no view is binding, and that the solution that appears preferable may be chosen. In this regard several considerations seem relevant:

(1) If the receiver is not assured of having a lien upon the fund in his hands it may make it somewhat more difficult to find capable persons willing to accept the position, since it is always possible that the appointment will be upset by a higher court. See 21 Colum. L.Rev. 466, 469 (1921). Even if they do accept, it may be that they will be rather hesitant to act as freely as they might otherwise be. Just how real these possibilities are may be debatable. However, it would seem wiser to resolve the doubt on the side of caution.

(2) Although both the receiver and the respondent might be termed "innocent" parties, the respondent may not be considered quite as "innocent" as the receiver. The receiver is completely disconnected with the litigation; he enters the picture only at the instigation of the court. Conversely, the respondent could, in a sense, be said to be partially responsible for the situation. A lawsuit is not a one-sided affair. The actions of both sides combine to bring about a situation that engenders litigation, instituted, it is true, by one side. Thus, the instant litigation was, certainly in some degree, due to the conduct of respondent at what might be termed the primary stage of activity. By this latter term is meant the everyday dealings and relations with others that for one reason or another leads someone to institute suit. Therefore, it seems to the Court that the equities of the case lie with the receiver vis-à-vis the respondent.

(3) There was always available to the respondent company the right to petition the Court for an order for security for costs. This fact was recognized by respondent's counsel, who stated at an in-

formal meeting in chambers that he intended so to do. He was informed that should the application be made it would be acted upon promptly. In a situation such as this, it certainly would have been the part of caution to file such a petition; yet, none was. Had it been done, the problems here present might well have been avoided.

 A review of all the pertinent cases cited by counsel has convinced the Court that the better rule would be to charge the receiver's costs to the fund in the hands of the receiver in the first instance. It is a matter for the discretion of the Court, reasonably exercised, and the facts of this case indicate that solution. Because the question is not entirely free from doubt and an appellate review is indicated, the Court will grant the turnover order upon condition that the respondent enter a bond for security of the payment of the disputed items, in the event that the present action of the Court is upheld on appeal.

An appropriate order, therefore, will be entered.