376 P.2d 31

**W. B. WHITE, Ulman Davis and Dorothy Swanner, Plaintiff-Appellees,**

**v.**

**Helen CLEVENGER, Florence G. Cole, Joseph Overy, Edwin L. Cole, Helen La Rue and God's House of Prayer, Inc., a corporation, Defendants-Appellants.**

**No. 7093.**

Supreme Court of New Mexico.

Oct. 29, 1962.

Rehearing Denied Nov. 30, 1962.

Rowley, Davis, Hammond & Murphy, Clovis, Williams, Johnson & Houston, Hobbs, for appellants.

Patrick F. Hanagan, Roswell, Jack Love, Albuquerque, for appellees.

W. T. SCOGGIN, District Judge.

This is the second time that this case comes before us and now involves the determination of the assessment of costs incident to the original proceeding and receivership fees allowed by the trial court.

The first appeal is reported in 69 N.M. 64, 364 P.2d 128, and so much of that decision as is considered material to the present appeal will be indicated: for removal of certain directors of the defendant corporation, God's House of Prayer, a nonprofit organization, on alleged breach of duties in administering a charitable trust, unfitness and incompetency to hold office, the action was initially commenced in the district court of Lea County by W. B. White, Ulman Davis and Dorothy Swanner. Alleging lack of capacity in such plaintiffs to maintain the action, the answer thereto, in connection with depositions, was considered by the trial court as a motion for summary judgment and dismissed the proceeding; but thereafter there was filed by the attorney general an amended complaint which he maintained was an action in quo warranto to remove such directors. From a judgment on March 2, 1960, based upon findings to the effect that such directors were paid unauthorized compensation and failed to keep proper accounts and records; that title to an automobile was taken by one of them without authorization; that they otherwise breached the trust; that the assets of the corporation were in danger of being dissipated and improperly used and therefore a receiver should be appointed to conserve the assets until further order of the court; and directing the appointment of such receiver and the removal of such directors, the defendants-appellants appealed. In such appeal the appellee rested his entire claim to bring the action pursuant to § 22–15–14, N.M.S.A. 1953, and urged that it was "brought and tried as one in quo warranto, both upon his own information and upon the complaint of private persons, * * *." Noting that no contention was made that such directors were not lawfully elected or appointed nor that they were not entitled to assume their office but that the "gist of the complaint is [was] that because of alleged acts of misconduct as directors, they should be removed from office and other directors appointed by the court to administer the trust," we there held that quo warranto was not a proper remedy to test alleged misconduct of a corporate officer as grounds for removal and remanded the cause with instructions to vacate the judgment and enter a judgment dismissing the action.

The mandate therefor was issued September 5, 1961 with direction to dismiss the action. This the trial court undertook by order dated October 3, 1961.

Preliminary to such order of dismissal, however, the trial court under date of September 26, 1961 entered an order on September 28, 1961 providing that from the time of filing the amended complaint the parties and the court treated the action:

> "as being an action by the State of New Mexico, * * *; and the so-called relators have been considered and treated by the parties hereto and the Court as having no interest in the action, not even as relators; * * * and that the so-called relators had no standing whatsoever, * * *.
>
> "2. That the receiver herein has accumulated approximately $18,000.00 during his administration of the trust estate, * * * is entitled to the sum of $2,000.00 for his services herein, said sum to be assessed as costs.
>
> "3. That the appointment of the receiver herein, and his administration of the trust * * * have benefited such trust estate to an extent which exceeds the costs (including the costs of the receivership) incurred by all of the parties * * *."

and directing that all costs, including the fee allowed the receiver and the costs allowed in the appeal to the Supreme Court should be assessed against the defendant, God's House of Prayer. On October 4, 1961 the defendants filed their bill of costs in the sum of $792.16 including appeal costs,

and on the same day the trial court entered an order approving the report of the receiver, directing the return to the defendant corporation of the property in his possession, and discharging such receiver and surety on his bond.

From the order entered September 28, 1961, assessing the receiver's fee and all other costs against the defendant, God's House of Prayer, as well as the order of October 4, 1961, discharging the receiver and his bondsmen, the defendants-appellants now prosecute this appeal in which they essentially contend that as they were the prevailing parties in the first appeal the costs should be taxed against the private relators and that the trial court lacked power or jurisdiction to do otherwise, whereas appellees maintain that the trial court had jurisdiction and discretion to assess the costs as it did and thereunder urge three subpoints to the following effect:

> "(a) The relators are not parties and have not been parties since the filing of the amended complaint and therefore no costs incurred thereafter may be taxed against them;
>
> "(b) Even if relators were or are parties appellants are estopped to so assert;
>
> "(c) In any event the District Court had jurisdiction to tax the costs of receiver as it did and its action was not error."

This appeal, therefore, involves a resolution of (1) whether or not the costs incident to the initial quo warranto proceeding, including the cost of appeal, may be taxed as directed by the trial court against the defendant God's House of Prayer, or otherwise; and (2) whether or not the fees allowed for the receivership services under the particular circumstances of this case may be taxed against the trust estate of the defendant God's House of Prayer, or otherwise.

As already noted from the decision of the first appeal, the initial action was commenced in the district court by W. B. White, Ulman Davis and Dorothy Swanner, and thereafter the appellee urged before this court that the action was brought and tried as one in quo warranto both "upon his own information and upon the complaint of private persons." So it is reflected in the trial court's original judgment of March 2, 1961 which shows it to have been approved by relators' own counsel and provides:

"3. That the relators W. B. White and Dorothy Swanner are residents of Lea County, New Mexico; that the relator Ulman Davis is a resident of Minco, Oklahoma; that the relators have brought to the attention of the Attorney General the alleged breaches of trust which are the subject matter of this action, and have requested this action by the Attorney General."

In view of the status of the private relators being obvious from the original proceeding, the costs of which are now in dispute, the action of the trial court by its order of September 28, 1961—subsequent to the issuance of our mandate directing the dismissal of the proceeding—would appear as a last minute but rather belated effort to save such relators from the consequence of the costs of the quo warranto action, which the very judgment of the trial court of March 2, 1961 indicates they had requested to be brought by the attorney general. The status of the private relators is therefore too obvious to be ignored.

■ Yet, whether or not the trial court had power or jurisdiction to take such action with respect to the purported status of the relators we need not decide. Rather, we agree with defendants-appellants that as they were the prevailing parties in the first appeal involving quo warranto proceedings, the costs incident thereto must be governed by the special statute relative to that type of action and are not otherwise within the discretion of the trial court, as urged at one point by appellee under Rule 54(d) of Civil Procedure. That this is so is in effect recognized by the appellees, who in their brief, concede this much:

"Therefore, generally speaking, the trial court would have discretion to tax the costs of this entire action against the corporate appellant, a prevailing

party. In this case, however, as the appellants ably point out, we have an action in quo warranto and if the relators lose their Subpoints A and B, this difference will be material.

" * * *. Moreover, they [appellees] recognize that the ruling that this action was one in quo warranto is the law of the case. Since, for that reason, this is an action in quo warranto, they [appellees] agree that the taxation of costs, other than the receivership costs, is governed by Sec. 22–15–11 (costs in quo warranto proceedings) rather than by Sec. 21–1–1(54) (d), N.M.S.A. 1953 Comp."

Even if our opinion in the first appeal did not contain any specific directions as to the costs, the trial court should have allowed the same as against the private relators in directing dismissal in accordance with our mandate and pursuant to § 22–15–11, N.M.S.A.1953, governing costs in quo warranto:

"The prevailing party in such proceedings may recover his costs from his opponent, Provided that no costs shall be taxable against the state nor the attorney general when acting as relator, but such costs *shall be taxable against and recovered from a private relator whenever the judgment is for the defendant.*" (Emphasis added)

74 C.J.S. Quo Warranto § 52; 20 C.J.S. Costs §§ 29, 74.

In Gallup Elec. Light Co. v. Pacific Improvement Co., 16 N.M. 279, 117 P. 845, this court reversed the judgment of the lower court and no specific order was made as to the costs. Yet there this court held under the provisions of an applicable statute—as would obtain here under the aforementioned provisions of § 22–15–11, N.M.S.A. 1953—the appellants having prevailed in this court, were entitled to recover their costs against appellee and no specific order was necessary. To the same effect is the case of State ex rel. Koski v. Kylmanen, 178 Minn. 164, 226 N.W. 401.

We, therefore, hold that except for the receivership allowance made by the trial court, the expenses incident to the quo warranto proceedings should have been and now should be assessed against the private relators.

This brings us to the determination involving the assessment against the trust estate of the defendant God's House of Prayer of the receivership allowance made by the trial court, which found that the services rendered by such receiver inured to the benefit of the estate in excess of all costs, including the fee so allowed. Appellants in this connection again urge that the trial court was without jurisdiction to effect such assessment while the appellees advocate that such costs should be deter-

mined, in effect, according to equitable principles. The bearing or effect of the first appeal does not appear to be altogether appreciated by appellants here in connection with this question. While it is true that we there held that quo warranto was not a proper remedy to test that the legality of misconduct, such opinion did not in any way negate the actions of misconduct reflected in the trial court's finding and judgment of March 2, 1961 that certain directors were receiving unauthorized compensation, breached the trust and "[t]hat the assets of the corporation [were] are in danger of being dissipated and improperly used, and therefore a receiver should be appointed to conserve said assets until further order of this Court." Appellants offer no challenge to such determination as not being correct nor do they advert to any evidence reflecting otherwise; and therefore no other inference can be derived than that under such circumstances the trial court felt impelled to appoint such a receiver; and the fact that quo warranto later proved to have been the improper remedy to have invoked does not remove the equitable considerations involved in the appointment. Nor is there any question raised, or challenge made, as to the determination that the services rendered by the receiver inured to the benefit of the trust estate in assessing of all costs, including the fee so allowed.

Under the particular circumstances of this case and such posture, the determination reached in Tucker v. Baker, 214 F.2d 627, (CCA 5) and analogous cases or allied line of authority would appear proper and applicable here. W. F. Potts Son & Co., Inc. v. Cochrane, 59 F.2d 375 (CCA 5); Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002; Mintzer v. Arthur L. Wright & Co., Inc., D.C., 171 F.Supp. 263, 75 C.J.S. Receivers §§ 7a, 303d, 429; 45 Am.Jur. Receivers, § 296, § 298; 4 A.L.R.2d 184–185.

In the Tucker case, it was determined that the district court was without jurisdiction to proceed to a reorganization and the appointment of a receiver by such development proved erroneous. There it was determined that the fees claimed by the receiver *except to the extent that the receiver's actions inured to the benefit of the estate* would be charged against parties invoking the receivership. (Italics supplied.) In the instant case it is noted that no challenge is made to the trial court's determination that the services of the receiver inured to the benefit of the trust estate in assessing of the costs so allowed.

In the Burnrite Coal case it is noted that after the coming down of the mandate, directing dismissal for want of jurisdiction, the district court allowed the account of the receiver and while the corporation contended that the district court was without jurisdiction it had not power to allow the account and order payment out of the

fund, under the equitable considerations there obtaining the allowance appears sustained. For the distinction or exception from the otherwise general rule that the parties provoking a receivership should be made to bear the costs, the following language from W. F. Potts Son & Co., Inc. seems apt:

"* * * Appellees treat the matter too much as though this were a suit for the wrongful and forcible taking of property by plaintiff or its agents. They overlook the fact that, though it is true that one who invokes without sufficient equitable grounds the administration by a receiver of the property of another may be in a proper case held accountable for the costs and expenses of the receivership and for losses which the receivership has visited upon the property, the appointment of a receiver is at last the court's appointment; the administration, its administration. * * * We think it perfectly clear that in a case like this, where there was no malice nor wrongful purpose, and only an effort to conserve property in which plaintiff believed, though it did not show, it was interested, the question of its liability should be considered and adjudged from the standpoint of working as little hardship as may be, plaintiff in the end to

be held liable for only the actual losses which its mistaken course has caused.

\* \* \* \* \* \*

"Cases which illustrate the concern which courts have in avoiding harsh and inequitable results in the matter of costs and expenses of receiverships, instituted and conducted in good faith, though without legal grounds, and the power which courts have to impose receivers' charges either upon the fund or upon the unsuccessful plaintiff, are Harkin v. Brundage, 276 U.S. [36] 57, 48 S.Ct. 268, 72 L.Ed. 457; Burnrite Coal Co. v. Riggs, 274 U.S. 209, 47 S.Ct. 578, 71 L.Ed. 1002. * * *

"* * * but, *since protection and not advantage is the end desired,* the plaintiff causing the receivership may not be charged with those disbursements which have inured to the benefit of the fund, or which, whether resulting in actual benefit or not to it, do not represent losses because the fund would have had to pay them if administered by the rightful owners. * * *" (Italics supplied.)

As otherwise stated in the Mintzer case:

"* * * A lawsuit is not a one-sided affair. The actions of both sides combine to bring about a situation that

engenders litigation, instituted, it is true, by one side. Thus, the instant litigation was, certainly in some degree, due to the conduct of respondent at what might be termed the primary stage of activity. By this latter term is meant the every day dealings and relations with others that for one reason or another leads someone to institute suit. Therefore, it seems to the Court that the equities of the case lie with the receiver vis-a-vis the the respondent."

So here the actions of the defendants-appellants, which undoubtedly impelled the trial court to appoint such receiver [and whose services inured to the benefit of the trust estate] cannot be overlooked and we, therefore, determine that under such line of authority and the particular circumstances of this case the equitable result should be that the receivership fee allowed be charged to the trust estate.

The case is, therefore, remanded with instructions to the trial court that other than the receivership allowance out of the trust estate, all other costs are to be assessed against the private relators and to vacate any judgment or order inconsistent herewith.

IT IS SO ORDERED.

COMPTON, C. J., and CHAVEZ, J., concur.