UNITED STATES of America,
Plaintiff-Appellee,

v.

SEVENTEEN THOUSAND, FOUR
HUNDRED DOLLARS IN
CURRENCY, Defendant,

and

Ronald A. Nocenti, Claimant-Appellant.

No. 74–1638.

United States Court of Appeals,
Tenth Circuit.

Argued May 2, 1975.

Decided Oct. 17, 1975.

Rehearing Denied Dec. 19, 1975.

Michael F. Scott, Scott, Goddard & Bush, Denver, Colo. (of counsel: Hugh M. Siegman, Santa Monica, Cal.), for claimant-appellant.

Douglas D. Doane, Asst. U. S. Atty., and James L. Treece, U. S. Atty., Denver, Colo., for plaintiff-appellee.

Before LEWIS, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

This case has a completely unique but undisputed factual background. Nocenti, described by the government as "a cooperating individual for the plaintiff United States of America," obtained from two illicit drug dealers in Denver, Colorado, Merkowitz and Smaldone, the sum of $18,500 for the purpose of buying, in Peru, as much cocaine as possible and smuggling the contraband drugs back to Denver. With the full cooperation of the Bureau of Narcotics and Dangerous Drugs, Nocenti, accompanied by a narcotics agent, flew to Lima with the money for the purpose of making the purchase. The government of Peru was informed of the venture and, when Nocenti made the purchase, arrested the seller but allowed the United States to complete the plan by releasing the cocaine to this government. The money

was never paid to the seller and remained in Nocenti's possession.

Nocenti and the narcotics agent then returned to the United States. The agent was in possession of the cocaine and Nocenti in possession of the money, the amount then being $17,400 with the difference having been spent for expenses by Nocenti. Upon reaching Denver, at the government's request, Nocenti turned over the remaining money to the United States and was given an evidentiary receipt.

Merkowitz and Smaldone were later "set up," arrested, and subsequently convicted of trafficking in narcotics with Nocenti as a key prosecution witness. These events occurred in 1972.

In 1973, the United States filed a complaint in rem against the $17,400 alleging the money to be in the custody of the Bureau of Narcotics and Dangerous Drugs, Denver, Colorado, and within the jurisdiction of the District Court for the District of Colorado and asserting a right to forfeiture under 19 U.S.C. § 1595a. Notice was given to the Bureau of Narcotics and Dangerous Drugs, Smaldone, Merkowitz, and Nocenti. The Bureau and Smaldone filed no claim. Merkowitz filed a claim after the case was heard and submitted to the trial court which was then rejected as untimely. Nocenti was the only appearing claimant.

The trial court held that the money was not subject to forfeiture and dismissed the government's complaint in this regard as part of the court's over-all judgment. No appeal has been taken by the government from this holding. The court also held that Nocenti did not prove ownership of the funds and thus denied his claim. The court further held that Nocenti was the agent of the United States during the entire course of the transaction and concluded that the money belonged to the United States under this finding and theory. Nocenti appeals from this holding and the denial of his own claim.

Nowhere in the proceedings below did the United States ever assert that Nocenti was its agent nor are we referred to any case where the government has formally or informally asserted that an informer was a lawful agent of the United States or has accepted responsibility for the actions of an informer as his principal. To the contrary, the United States has consistently refused responsibility for the actions of informers in cases involving entrapment and various other aspects of criminal activities. *See United States v. Spivey*, 10 Cir., 508 F.2d 146, *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104. We are not inclined to transform a government designated "cooperating individual" into an agent simply because of the unusual history we here review. The record does not support the trial court's finding of agency.

Viewed traditionally, Nocenti was the agent of Merkowtiz and Smaldone. And in light of the serious criminality involved the law will require no accounting of this agent to his principals. Restatement (Second) of Agency § 412(2)(b) (1958). We are left, then, with Nocenti as a witness who surrendered possession of evidence to the Bureau of Narcotics and Dangerous Drugs at the Bureau's request and who now seeks its return to his possession. His claim is unusual, dramatic, but valid.

The judgment is reversed and the case remanded with directions to order the total money surrendered to Nocenti. During the course of this litigation we ordered the $17,400 to be deposited with the Clerk of the Court and placed in an interest paying account. As part of the mandate it is ordered that the Clerk forthwith withdraw the deposit and interest and deliver the total money to the Clerk of the District Court.

DOYLE, Circuit Judge (dissenting).

I respectfully dissent.

This cause is an offshoot of a criminal prosecution against Eugene L. Smaldone, defendant-appellant, and one Larry A.

Merkowitz, both of whom were convicted of conspiring to import cocaine. Our opinion in *United States v. Smaldone*, 484 F.2d 311 (10th Cir. 1973) contains a statement of the background facts and we need not recount them except to note that Smaldone and Merkowitz each gave to the present claimant $9,250. This had two ostensible purposes and one actual purpose. The former were to purchase as much cocaine as possible on behalf of Smaldone and Merkowitz and, secondly, to smuggle this cocaine into the United States for delivery to Smaldone and Merkowitz. The actual purpose of the purchase of the cocaine was to bring about the arrest and conviction of Smaldone and Merkowitz. In our opinion we noted in respect to the claimant Nocenti "the witness in question was a paid government informant."

The majority opinion expresses uncertainty as to whether Nocenti acted as an agent of the government. The evidence at the Smaldone-Merkowitz trial clearly establishes that Nocenti journeyed to Peru with the money that is now before us for one purpose and that was to bring back some cocaine so that it would be delivered to Smaldone and Merkowitz and provide evidence against them. It seems clear to this writer that Nocenti was acting on behalf of the United States Government. In fact, a government agent accompanied him on the trip to Peru. He had the assistance of government agents in getting the cocaine into the United States. He readily delivered the remaining funds to the government agents for evidence after he arrived: So then since he was not acting on behalf of Smaldone and Merkowitz he had to be acting on behalf of the government, and his obtaining of this money was certainly not on his own behalf.

The entrapment cases recognize an agency in that they impute the acts of the informant to the government. *See, e. g., United States v. Hampton*, 507 F.2d 832 (8th Cir. 1974), *cert. granted*, 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975); *United States v. Conway*, 507 F.2d 1047 (5th Cir. 1975); *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971); *United States v. Test*, 486 F.2d 922 (10th Cir. 1973).

In *United States v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir. 1975), the Fifth Circuit ruled that the acts of a paid informant, even if acting on his own initiative, are to be imputed to the government. Further, they are to be imputed to the government in a situation in which the paid informer is not acting on his own initiative but is acting at the behest of the government. Courts have sometimes referred to an informer as the government's agent. *See, e. g., United States v. Waddell*, 507 F.2d 1226, 1228 (5th Cir. 1975), where the court said: "The law is that Smith, if he was a paid Government informer, could entrap Waddell, even though no Government officer knew of Smith's actions, because the Government is deemed to have constructive knowledge of such chicanery; the defense of entrapment cannot be defeated because the trapping was perpetrated by a Government surrogate." *See also United States v. West*, 511 F.2d 1083 (3rd Cir. 1975), wherein it was said:

> This case is unusual in that the uncontradicted evidence shows a confederation of two government agents, one an informer who, according to uncontradicted testimony, actually supplied the narcotics in question and the other an undercover officer who, as prearranged with the informer, bought this contraband from the accused third person whom the informer had persuaded to join with him in a selling venture.

511 F.2d at 1085.

And *see United States v. Leon*, 487 F.2d 389 (9th Cir. 1973). There the court said:

> The practice of the Government in employing agent-informers in narcotics cases is well known. We also know that such agents are usually not trained officers . . .

487 F.2d at 392, quoting *Velarde-Villarreal v. United States*, 354 F.2d 9, 13 (9th Cir. 1965).

*See also United States v. Hoffa*, 385 U.S. 293, 311, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

In Jencks Act cases a conversation of a defendant with an informer is not always regarded as a conversation with a government agent for the purpose of determining whether the statement is discoverable under 18 U.S.C. § 3500(e). *See, e. g., United States v. Hoffa*, 437 F.2d 11 (6th Cir. 1971), *cert. denied*, 402 U.S. 988, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971). There are Second Circuit cases which at least state in dictum that a conversation with an informant is a conversation with a government agent for purposes of the Jencks Act. *See United States v. Birnbaum*, 337 F.2d 490, 497–98 (2d Cir. 1964); *United States v. Crisona*, 416 F.2d 107, 113 (2d Cir. 1969), *cert. denied*, 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1960) (discussing *Birnbaum*).

In the present context I find no difficulty in concluding that Nocenti was acting as a government agent for the purpose of purchasing the narcotics and delivering them to Smaldone. As a consequence, the government has a better right than Nocenti even if we were to assess the matter relatively. A further consequence flowing from the fact that he was acting for the government is that he could not have possession of the money for his own benefit.

\*   \*   \*   \*   \*   \*

How this money is to be treated appears to be governed by 28 U.S.C. § 2042, which is a provision dealing with withdrawal of monies deposited in court. The section provides:

No money deposited shall be withdrawn except by order of court. In every case in which the right to withdraw money deposited in court has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

The money ended up in the possession of the Bureau of Narcotics and Dangerous Drugs (BNDD). However, it was ordered to be paid into the court in the course of the proceedings before this court. Being in the nature of an interpleader action, it should have been ordered by the district court to be deposited pursuant to 28 U.S.C. § 1335(a)(2).

Section 2042, *supra*, requires that one seeking money which is in the possession of the court must fully prove his right thereto. He can succeed only if he establishes independent good title [1] (as distinguished from a lack of title in somebody else or a right in comparison with another). The fact then that the government cannot establish that the money ought to be forfeited does not mean that Nocenti thereby has some semblance of title. It seems clear to us that since Nocenti obtained these funds from Smaldone and Merkowitz for the purpose of buying and smuggling in cocaine, and in view of the fact that this purported conspiracy was a sham and a fraud inasmuch as he was in truth acting for the government, it cannot be said that he was in any sense an agent for Smaldone and Merkowitz. He may have been some manner of bailee, but this does not confer any title on him either. In fact, it is inescapable that Nocenti had no title and acquired none. He had

---

1. *Hansen v. United States*, 340 F.2d 142 (8th Cir. 1965); *United States for Use of Home Indemnity Co. v. American Employers' Ins.* Co., 192 F.Supp. 873 (D.N.D.1961); *cf. United States v. Chapman*, 281 F.2d 862 (10th Cir. 1960) (same standard in case of interpleader).

at most possession, but this was as a representative of the United States. He had no independent right; had not a single stick in the so-called bundle of property rights. For this court then to transfer the money to him would aid him in carrying out an invalid conversion of the funds to his own use.

Finally, I see no necessity for hastening to relinquish this sum of money. Let the law take its course pursuant to 28 U.S.C. § 2042. The deposit in the Treasury of the United States does not act as an escheat. A claimant with title does not lose it thereby.

The really objectionable aspect to me is that the court is lending its aid to one who has no legal right to the award but, more important, the court is going to the assistance of a wrongdoer-a converter.

I submit, therefore, that it would be better to allow the informer to get his compensation in the manner provided by statute, in the Comprehensive Drug Abuse Prevention and Control Act of 1970, which authorizes the Attorney General to pay an informer such sum or sums of money as he may deem appropriate. 21 U.S.C. § 886(a). This court does not have any authority to award compensation to an informer and it should not take it upon itself to do so.

In sum, then, since Nocenti was a representative of the government, whereby he acted for it, his acts were imputed to the government and the government's right was superior to his.

Secondly, the money should not be given to Nocenti by court decree. It should be held for the true owner or ultimately inherited by the United States Treasury.