**UNITED STATES of America, Appellee,**

v.

**Dong Chan KIM, Defendant–Appellant.**

**No. 760, Docket 88–1462.**

United States Court of Appeals, Second Circuit.

Submitted Feb. 8, 1989.

Decided March 14, 1989.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Robert L. Begleiter, David M. Nocenti, Asst. U.S. Attys., Brooklyn, N.Y., of counsel), for appellee.

Samuel Weissman, New York City, for defendant-appellant.

Before KEARSE and WINTER, Circuit Judges, and SWEET, District Judge.*

KEARSE, Circuit Judge:

Defendant Dong Chan Kim appeals from an order of the United States District Court for the Eastern District of New York, Charles P. Sifton, *Judge,* denying his motion, made after his acquittal of bribery, for the return of $1,000 he had given to an agent of the Internal Revenue Service ("IRS"). The district court denied the motion and ordered the $1,000 transferred to the United States Treasury ("Treasury") pursuant to 18 U.S.C.A. § 3666 (West 1985). On appeal, Kim contends principally that § 3666 is a sentencing provision and thus is inapplicable to him, and that the forfeiture ordered by the court was inappropriate and inequitable. Finding no merit in any of Kim's arguments, we affirm the order of the district court.

## BACKGROUND

In March 1988, Kim was indicted on one count of offering a bribe to an IRS agent, in violation of 18 U.S.C. § 201(b)(1)(A) (Supp. IV 1986). Among the evidence presented at trial were testimony of the IRS agent, Stanley Farrell, and a tape recording of a July 1987 conversation between Farrell and Kim during which Kim gave Farrell $1,000.

In March 1987, Farrell was assigned an audit of the 1985 joint income tax return of Kim and his wife. Farrell testified that he first met with Kim in May 1987 at the IRS office and explained the nature of the audit and the appeal rights. He told Kim he estimated Kim's additional tax liability at approximately $10,000, to which Kim responded, "Isn't there any way we could get it down further?" Farrell told Kim the additional liability could be reduced if Kim provided proper documentation. Kim had stated that he had prepared the return himself and that there were "no real records."

Farrell next met with Kim at Kim's home and went over the gross receipts of the two businesses run by the Kims. Toward the end of the meeting, Mrs. Kim offered Farrell a sweatsuit. When Farrell stated that such a gift would be against the law, Mrs. Kim said the suit was for Farrell's wife. Farrell explained that it would still be illegal. After this discussion, Kim asked Farrell if there was any way he "could manage to get the report down to $2,500."

* Honorable Robert W. Sweet, Judge of the United States District Court for the Southern District of New York, sitting by designation.

Farrell again explained that he would need further documentation.

Farrell reported these conversations to the IRS Inspection Division. At his next meeting, held in Kim's home on July 1, 1987, Farrell carried a recording device in his briefcase. At that meeting, Kim gave Farrell $1,000 in cash, in return for which Farrell understood that Kim expected Farrell to report only $2,500 in additional liability and not to cause an audit of Kim's 1986 return. This conversation was recorded.

On July 13, 1987, in another recorded conversation, Kim asked Farrell to alter the adjustments to the 1985 return in order to show increased expenses. This was to limit any increase in Kim's state taxes.

In March 1988, Kim was indicted for bribery, charged with corruptly giving, offering, and promising something of value to a public official on July 1, 1987, with the intent to influence an official act, in violation of 18 U.S.C. § 201(b)(1)(A). The government's proof included the evidence described above. Kim did not deny paying Farrell the $1,000 but argued that he had been entrapped. Kim's first trial resulted in a deadlocked jury. His retrial ended in acquittal, as the jury found him not guilty.

Kim promptly moved for the return of the $1,000 he had paid Farrell, contending that the government was not entitled to retain the money because it had entrapped Kim into paying the bribe and had been guilty of outrageous misconduct in failing to advise Kim fully of his right to appeal the results of the tax audit. The government opposed the motion, arguing, *inter alia*, that the money might be subject to civil forfeiture pursuant to 26 U.S.C. § 7302 *et seq.* (1982) or transferrable to the United States Treasury pursuant to 18 U.S. C. § 3666.

The district court noted that on a motion for return of property used in a criminal prosecution, the court is the finder of fact, the jury's verdict is not binding on the court, and the defendant has the burden of proving entrapment or misconduct by a preponderance of the evidence. After offering the parties an opportunity to present additional evidence, which both declined, and taking into account the jury's verdict, the court concluded that Kim had not carried his burden:

Having heard the evidence at trial and no other being offered I am not at all persuaded that he was entrapped and I am not persuaded that the government's conduct [was] of such a sort as to warrant the relief that is being sought.

On the contrary, having listened to this tape recording, the lengthy tape recording of the conversation back and forth between Mr. Kim and the agent my impression is Mr. Kim was feeling the agent out, waiting to pay a bribe until he discovered whether the agent was a bribe-taker, and after a lengthy period of going back and forth and approaching the subject gingerly, fully aware of the criminal nature of the conduct that he was about to engage in, Mr. Kim persuaded himself that he was in the presence of a fellow criminal ..., so the evidence persuaded me that it was more likely than not that a crime was committed, a bribe was given, the defendant was not entrapped, the agent proceeded properly in the face of what he took to be someone ready to offer a bribe, and accordingly there is no basis for a return of the money received, so I will direct the clerk to enter a judgment denying the relief requested.

Accordingly, the court denied Kim's motion and ordered the $1,000 transferred to the Treasury pursuant to § 3666.

## DISCUSSION

On appeal, Kim contends principally (1) that § 3666 was not applicable to the present case because it is a sentencing provision that may be invoked only upon conviction, (2) that the government's retention of the money inflicts upon him a criminal penalty that is inconsistent with his acquittal, and (3) that he is entitled to the return of the money as a matter of equity. We have considered all of Kim's challenges to the district court's order and find them to be without merit.

■ Section 3666 provides as follows:

Moneys received or tendered in evidence in any United States Court, or before any officer thereof, which have been paid to or received by any official as a bribe, shall, after the final disposition of the case, proceeding or investigation, be deposited in the registry of the court to be disposed of in accordance with the order of the court, to be subject, however, to the provisions of section 2042 of Title 28.

18 U.S.C.A. § 3666. Though § 3666 is in a chapter of Title 18 entitled "Miscellaneous Sentencing Provisions," its terms furnish several indications that it is not in fact a sentencing statute.

First, the section gives instruction as to how moneys are to be disposed of "after" the final disposition of a case. In a criminal prosecution, sentencing is the final disposition. Proceedings that by definition occur only after sentencing cannot be deemed part of sentencing.

Further, the section by its terms governs treatment of money after the conclusion of a "case, proceeding *or investigation.*" (Emphasis added.) Had Congress intended this section to deal only with sentencing, the phrase "or investigation" doubtless would have been omitted, since an investigation may or may not lead to a criminal prosecution; when it ends without having resulted in such a prosecution, there will have been no conviction for which a sentence could be imposed. Thus, the provision in § 3666 for deposit of moneys after any final disposition of an investigation reveals that the order need not be part of a sentence.

Lastly, the language of the statute belies the notion that Congress intended to allow the court to order deposit of bribery evidence moneys into the Treasury only if the prosecution has ended in a conviction, for the section applies after the "disposition" of the case. The term "disposition" encompasses all outcomes, not just those unfavorable to the accused. Accordingly, we conclude that § 3666 is not a sentencing provision and that its applicability is not limited to cases in which the person accused of bribery is convicted.

This interpretation is supported by the reference in § 3666 to 28 U.S.C. § 2042. The latter section provides as follows:

No money deposited under section 2041 of this title shall be withdrawn except by order of court.

In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

28 U.S.C. § 2042 (1982). Section 2041, referred to in § 2042, provides as follows:

All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to. the credit of such court.

This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

28 U.S.C. § 2041 (1982). The thrust of the three sections, read together, is that when moneys paid to an official as a bribe have been received in court, the payor of the moneys may not regain possession of them without a court order, and to obtain such an order, the payor must prove his right to regain the moneys.

■ Both § 3666's reference to 28 U.S.C. § 2042, which is applicable to civil proceedings, and the placement of the burden of proof on the claimant, indicate that Congress intended a proceeding under § 3666 to be a civil proceeding. Nor is the effect of § 3666 so punitive as to negate that intent. *See United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362–63,

104 S.Ct. 1099, 1104–05, 79 L.Ed.2d 361 (1984). Because as a general matter Kim has no right to recover money paid as a bribe, *see Clark v. United States,* 102 U.S. 322, 26 L.Ed. 181 (1880), the court's refusal to return the money to him under § 3666 does not constitute a penalty.

These factors make it clear that a jury verdict in the criminal trial is not binding on the court in a § 3666 proceeding, for the burdens and quanta of proof applicable to criminal cases and civil proceedings are substantially different. The failure of the government in the criminal trial to prove lack of entrapment beyond a reasonable doubt is simply not inconsistent with a finding in a civil proceeding that the claimant failed to prove it more likely than not that there was entrapment. *Cf. United States v. One Assortment of 89 Firearms,* 465 U.S. at 361, 104 S.Ct. at 1104 ("neither collateral estoppel nor double jeopardy bars a civil, remedial forfeiture proceeding initiated following an acquittal on related criminal charges"); *United States v. Dunn,* 802 F.2d 646, 647 (2d Cir.1986) (allowing civil forfeiture case, which requires proof only by a preponderance, to proceed notwithstanding acquittal since acquittal "merely determined that the government's proof failed to overcome all reasonable doubt"), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987). Accordingly, we reject Kim's argument that the jury's verdict of acquittal established that he was entrapped and that it precluded the district court's conclusion that he was not entrapped.

█ Finally, we reject Kim's contention that the court should have ordered the $1,000 returned to him because of equitable considerations (a contention that at times appears to be an attack on the federal income tax laws: "It all began because Mr. Kim was making money in business and the Government wanted a share." (Appellant's brief on appeal at 14)). Though Kim contended that the government's conduct was outrageous because Farrell did not inform him of his right to appeal Farrell's audit determination, Farrell testified that he did so inform Kim, and the district court found that Kim had not shown by a preponderance of the evidence that the government's conduct was of the sort that suggested Kim should get his money back. So far as appears from the record, the only established fact favoring Kim is the fact that he was acquitted in the criminal trial. In light of the district court's finding that it was more likely than not that Kim had not been entrapped but was the instigator, Kim failed to show equitable considerations requiring that the moneys be returned to him.

CONCLUSION

The order of the district court is affirmed.