**CAJUN ELECTRIC POWER COOPERATIVE, INC.,**
Plaintiff–Appellant,

v.

**RILEY STOKER CORPORATION, et al., Defendants–Appellees.**

No. 89–3619
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 30, 1990.

**442**

John Schwab and John Sharp, Schwab & Walter, Baton Rouge, La., for plaintiff-appellant.

Reuben L. Hadlund, D.R. Edwards and Deborah C. Paskin, Latham & Watkins, Chicago, Ill., for Riley Stoker Corp.

John M. Wilson and Robert L. Theriot, Liskow & Lewis, New Orleans, La., Glen L. Langley, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., for U.S. Riley Corp.

Marian Mayer Berkett, Deutsh, Kerrigan & Stiles, New Orleans, La., for Fed. Ins. Co., et al.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

In this diversity case, plaintiff-appellant Cajun Electric Power Cooperative (Cajun) appeals the district court's decision that a deposit by defendants-appellees Riley Stoker Corporation and its sureties (collectively, Riley) into the registry of the court pursuant to Rule 67 of the Federal Rules of Civil Procedure constituted timely payment of an arbitration award rendered against Riley in favor of Cajun. We affirm.

**Facts and Proceedings Below**

Cajun sued Riley in the United States District Court for the Middle District of Louisiana in December of 1983 seeking to recover $200,000,000 in damages allegedly suffered as a result of Riley's design and construction of the steam generators for Cajun's Big Cajun Number Two power generating facility in Pointe Coupee Parish, Louisiana. On Riley's motion, the district court stayed its proceedings and ordered the parties to arbitrate their dispute in accordance with a binding arbitration clause in their contract. Cajun appealed and also sought a writ of mandamus to challenge this decision, but we sustained the district court. *See In re Cajun Elec. Power Coop., Inc.,* 791 F.2d 353 (5th Cir. 1986).

Accordingly, arbitration proceedings began in July of 1986. After conducting a massive inquiry, the arbitration panel issued its final award on February 7, 1989. The panel purported to resolve "all claims and counterclaims submitted [to] arbitration," and ultimately rendered a net award in favor of Cajun in the amount of $21,914,403. The award ordered Riley to pay this sum to Cajun within thirty days of the date the award was transmitted to the parties, and provided that any amount not paid within this period would bear interest at the Louisiana statutory rate from the date of the award until paid.

On February 14, Riley asked Cajun to join in a motion to the district court to confirm and enter judgment on the arbitration award pursuant to 9 U.S.C. § 9. Cajun refused to join in the motion, however, indicating that it had not yet determined whether it would move to vacate or modify the arbitration award pursuant to 9 U.S.C. § 10. Cajun continued to insist that Riley pay the net sum awarded by the panel before the expiration of the payment deadline or suffer the interest penalty. There followed a flurry of letters between the parties in which Cajun persistently evaded Riley's attempts to clarify Cajun's position with respect to the award. Finally, on February 21, Riley filed and served a motion to *ex parte* confirm and enter judg-

ment on the arbitration award, asking for an expedited consideration of its motion so that it could pay the award before the grace period expired.

On February 23, the district court held a telephone conference on the pending motions. At that time, Cajun told the court it had not yet decided whether it would move to modify or vacate the arbitration award, and indicated that it likely would not reach a decision before the expiration of the statutory period created by 9 U.S.C. § 12.[1] Because Riley was understandably reluctant to tender payment to Cajun pursuant to the award before it was converted into an enforceable judgment, the district court granted Riley's request to deposit its payment satisfying the award into the registry of the court pursuant to Rule 67 of the Federal Rules of Civil Procedure. Riley deposited the funds by wire on March 7, prior to the expiration of the payment deadline; the funds were then invested by the court at a reasonable rate of return (though the actual return was not so lucrative as the Louisiana statutory rate).[2] In its order allowing this deposit, the district court also gave Cajun leave to move for withdrawal of the funds whenever it chose to do so, which Cajun did on March 9 (also within the payment period established by the arbitration award).

The district court's docket, however, was sufficiently crowded that the court was unable to formally hear these motions until May. On May 1, Cajun moved the district court to vacate the arbitration award in part, raising a number of challenges to the panel's decision and authority. On May 5, the district court finally heard all pending motions, and afterwards orally indicated that it would confirm the arbitration award and overrule Cajun's challenges to the panel's actions.[3] In addition, the court found that Riley's deposit into the registry of the court constituted payment under the terms

of the arbitration award, and that Riley was therefore not liable for any post-judgment interest. The court concluded by ordering the parties to prepare an agreed judgment implementing its oral findings.

The parties still, however, were unable to resolve this matter amicably, because a new dispute arose as to exactly which claims between the parties had been resolved by the arbitration. On July 21, the court held yet another hearing on these additional matters (none of which are at issue in this appeal). Finally, on August 4, the court entered its final judgment. That judgment (1) confirmed the arbitration award in all respects and entered judgment upon it; (2) denied Cajun's motion to vacate the award; (3) held that Riley's deposit into the registry of the court constituted timely payment pursuant to the award; (4) held that the award extinguished all pending claims against all defendants; (5) granted Cajun permission to withdraw the funds from the court registry (along with the interest actually earned by those funds, less an administrative fee); and (6) dismissed the case.

### Discussion

The sole issue on appeal involves Cajun's claim that the district court erred in deeming Riley's deposit into the court registry to be a timely payment under the terms of the arbitration award. Cajun contends that Riley failed to comply with the payment terms established in the award, and therefore claims that it was entitled to a judgment against Riley for interest at the Louisiana statutory rate from the date of the award until the funds were released to Cajun from the registry of the court. We disagree.

### I. Tender

██ Cajun contends that Riley's deposit was not a valid tender under Louisiana law.

---

1. That section provides that a party wishing to challenge an arbitration award *must give notice within three months* of the date the award is filed or delivered.

2. The applicable Louisiana statutory interest rate was 11.5 percent. The funds deposited with the court registry were invested in seven-

day certificates of deposit, which according to Cajun generated approximately an 8.65 percent average rate of return.

3. Cajun has abandoned these claims, and does not challenge the validity of the arbitration award on this appeal.

As a general matter, Louisiana law requires that a tender in satisfaction of an obligation must be made without any stipulation or condition. *See, e.g., May v. Market Ins. Co.*, 373 So.2d 763, 768 (La.App. 1979), *aff'd in part & rev'd in part on other grounds*, 387 So.2d 1081 (La.1980). But the Louisiana Civil Code provides:

"When the object of the performance is the delivery of a thing or a sum of money and the obligee, without justification, fails to accept the performance tendered by the obligor, the tender, followed by deposit to the order of the court, produces all the effects of a performance from the time the tender was made if declared valid by the court.

"A valid tender is an offer to perform according to the nature of the obligation." La.Civ.Code Ann. art. 1869 (West 1987).

In support of its contention that Riley's deposit failed to meet the tender requirement, Cajun relies on several Louisiana cases construing this law. Only two involved tender into the registry of the court.

The first of those is *Sims v. Hays*, 521 So.2d 730, 734–35 (La.App.1988). In *Sims*, the promisee on a note tendered the principal on the note into the registry of the court in an attempt to arrest the accrual of interest pending litigation. The promisee continued, however, to assert defenses to the obligation and denied some or all of her liability on the note. The court held that this was not an unconditional tender.

The second case is *Copelco Leasing Corp v. Diagnostic Imaging Servs. of St. Tammany, Inc.*, 891 F.2d 77, 82 (5th Cir. 1989) (diversity case applying Louisiana law), in which this Court reached the same result on similar facts. In *Copelco*, a lessor tendered payment for back taxes, interest, and rent into the registry of the court, but continued to deny liability for these payments. This Court held that was not an unconditional tender under Louisiana law.

In contrast, Riley cites *Purvis v. American Motors Corp.*, 538 So.2d 1015, 1020–21 (La.App.1988), *writ denied*, 541 So.2d 900 (La.1989), also involving a tender into the registry of the court in an attempt to stave off the accrual of interest pending litigation. The deposit in *Purvis* was made by a defendant insurer who admitted it was liable to the full extent of its policy limit and deposited that amount with the court. In that case, the court held that this tender did satisfy the requirements of an unconditional tender under Louisiana law.

We conclude that Riley's deposit into the registry of the court was sufficiently unconditional to satisfy the tender requirements of Louisiana law. Indeed, the deposit was absolutely unconditional, assuming the validity of the arbitration award from which the obligation arose. Riley deposited the funds with the court with the intent that Cajun be allowed to withdraw them upon confirmation of the award, and Riley did not dispute the validity of that award, but rather sought to have it confirmed. Cajun's evasive behavior did cast doubt on the award's validity, but that cannot be enough to make Riley's deposit conditional. If the arbitration award were invalid (as Cajun seemed to suggest in its maneuvering), then Cajun had no right to Riley's payment pursuant to its terms in the first place. In other words, Riley's tender was "an offer to perform according to the nature of the obligation," as required by Louisiana law. La.Civ.Code Ann. art. 1869 (West 1987).

## II. *Rule 67*

Having concluded that a deposit into the registry of the court would satisfy the tender requirements of Louisiana law on the facts of this case, the sole remaining issue is whether the district court improperly used Rule 67 to accomplish this result. That rule provides in pertinent part:

"In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money ..., a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum ..., whether or not that party claims all or any part of the sum or thing."

The rule's purpose is to relieve the depositor of responsibility for the fund in dispute

while the parties hash out their differences with respect to it. *E.g., Gulf States Utils. Co. v. Alabama Power Co.*, 824 F.2d 1465, 1474 (5th Cir.1987) (quoting 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 2991 (1973) [hereinafter, Wright & Miller] ), *modified on other grounds*, 831 F.2d 557 (5th Cir.1987). We have suggested that an actual deposit of funds pursuant to the rule may stop the accrual of interest pending a final resolution of the rights of the parties with the respect to the fund. *See United States ex rel. Garrett v. Midwest Constr. Co.*, 619 F.2d 349, 353–54 (5th Cir.1980); *see also* Wright & Miller § 2991, at 51–52 & cases cited in n. 7.

▉▉▉ Whether Rule 67 relief should be available in any particular case is a matter committed to the sound discretion of the district court. *See, e.g., Gulf States Utils. Co.*, 824 F.2d at 1474–75. Nothing in this record indicates any abuse of that discretion here. The arbitration award gave Cajun the right to claim $21,914,403, a sum that Riley immediately indicated it was willing to pay upon confirmation of the award. It was Cajun who cast doubt on the validity of the award, taking the inconsistent positions of demanding payment pursuant to the terms of the award while simultaneously hinting (albeit evasively) that it would eventually file a challenge to the award's validity. This, in turn, forced Riley to choose whether to transfer a huge sum of money to Cajun in satisfaction of an arbitration award that Cajun refused to recognize, or to suffer significant interest penalties pending a final resolution of Cajun's challenge to the award.[4]

Rule 67 seems particularly appropriate on these facts. Cajun was entitled to deliberate before deciding whether to challenge the arbitration award, but it would be patently unfair to allow this deliberation to occur at Riley's expense. The district court's decision gave Riley a fair opportunity to comply with the award's payment deadline while still allowing Cajun a full and fair opportunity to consider its legal options. The district court's approach was an insightful and equitable solution to the dilemma facing Riley, and was hardly an abuse of discretion.

Nonetheless, Cajun contends for the first time on this appeal that Rule 67 was not available in this case because, Cajun claims, the debt was not in dispute. Cajun's challenge to the award, it claims, did not contest the amount of the net award, but rather attacked the award's preclusive effect on other claims Riley had against Cajun.

Not only is this argument raised for the first time on appeal, it is incorrect as a factual matter. In the flurry of letters between the parties that occurred between the date the award was rendered and the date the court approved Riley's deposit into the registry of the court, Cajun consistently evaded Riley's attempts to clarify its position with respect to the award. Cajun's failure to specify its concerns necessarily cast doubts on the finality of the entire award, and Riley's acquiescence in its debt to Cajun was contingent upon the validity of that award. If the debt had been undisputed (that is, if Cajun had been willing to join with Riley in a joint motion to confirm the arbitration award when it was rendered), the controversy that gave rise to this appeal would never have arisen in the first place.

### III. *Modification*

▉▉▉ Finally, styled as an independent second issue in this appeal, Cajun contends that the district court improperly modified the arbitration award when it allowed Riley to tender payment into the registry of the court. Cajun claims that the court lacked statutory authority to do so.

Quite the contrary, we think the district court's use of Rule 67 was fully consistent with the terms of the arbitration award. The district court was authorized by law to enforce the arbitration award, and as a

---

**4.** Indeed, Cajun's vague suggestions that it would probably not decide whether to contest the arbitration award until the expiration of the ninety-day period established by 9 U.S.C. § 12 might well appear (to a cynical observer) to be an intentionally dilatory tactic designed to force Riley into just such a dilemma.

necessary corollary it had the authority to construe its terms and apply them in context. *See San Francisco Elec. Contractors Ass'n v. International Bhd. of Elec. Workers, Local No. 6,* 577 F.2d 529, 534 (9th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 455, 58 L.Ed.2d 425 (1978). It goes without saying that the award's validity was a precondition to the parties' obligations to comply with its terms. As such, we doubt the arbitration panel intended to allow Cajun to exploit the award's payment terms by insisting on Riley's strict compliance with the award pending Cajun's efforts to set it aside. Moreover, as we have noted, the court-approved deposit into the registry of the court was a valid tender in satisfaction of Riley's obligation under Louisiana law. There was no modification of this award.

### Conclusion

After reviewing the record, we are satisfied that the district court's use of the court registry to resolve the dilemma created by Cajun's tactics was consistent with the arbitration award and was a proper use of Rule 67. The decision of the district court is therefore AFFIRMED.