United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 4, 2005**

Charles R. Fulbruge III
Clerk

REVISED MARCH 18, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-20888

In The Matter of:   CRAIG'S STORES OF TEXAS INC.

Debtor.

- - - - - - - - - -

CRAIG'S STORES OF TEXAS INC.,

Appellant,

versus

BANK OF LOUISIANA,

Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, JONES and DENNIS, Circuit Judges.

PER CURIAM:

This case involves a court's obligations regarding money deposited into the court's registry for a proceeding over which that court had no jurisdiction. During the course of litigation in bankruptcy court between Craig's Stores of Texas, Inc. ("Craig's") and Bank of Louisiana ("the Bank"), Craig's deposited the sum of $252,440.49 into the court's registry. This court decided in In re Craig's Stores of Texas, Inc., 266 F.3d 388 (5th Cir. 2001),

however, that the bankruptcy court lacked jurisdiction over the adversary proceeding between Craig's and the Bank. The district court released the deposited funds to the Bank because it determined that the funds had been placed in the registry to secure the Bank's account claim. We hold that the district court's disbursement order results in the transfer of funds to which the Bank has never proven entitlement before a court of competent jurisdiction. We must reverse the district court's Order Disbursing Funds and remand this case with instructions to disburse the funds to the party that deposited them.

Pursuant to Rule 67 of the Federal Rules of Civil Procedure, a party may deposit a sum of money with the court. Once funds are deposited, the court should determine ownership and make disbursements. <u>Gulf States Utils. Co. v. Alabama Power Co.</u>, 824 F.2d 1465, 1474 (5th Cir. 1987). The conclusion that the funds must be returned to Craig's flows from the Agreed Order by which Craig's deposited the money in the registry and from the circumstances surrounding this transaction.

In mid-1996, eighteen months after the approval of Craig's Chapter 11 reorganization plan, Craig's filed an adversary proceeding against the Bank in bankruptcy court alleging that the Bank failed to perform under a charge account contract. At this time, the Bank filed its own adversary proceeding, seeking an injunction to prevent Craig's from disposing of funds within its possession, requesting the bankruptcy court to convert Craig's

2

confirmed Chapter 11 plan to a Chapter 7 liquidation, and seeking to recover money that the Bank contended was owed under the contract between them. Shortly thereafter, the bankruptcy court entered an Agreed Order whereby Craig's would deposit the sum of $252,440.49 into the Bankruptcy Court's registry.

Craig's asserts that it made this deposit for the purpose of discouraging the Bank from attempting to convert Craig's bankruptcy proceedings into Chapter 7 liquidation. Craig's deposited the money in escrow in order to reassure the Bank that Craig's would not transfer or dispose of its liquid funds before the Bank could litigate and liquidate any underlying claim the Bank might have against Craig's.

The Bank urges a different understanding of this deposit. According to the Bank, Craig's deposit represented a concession that it owed the Bank $252,440.49 under the contract. In other words, Craig's was relinquishing its claim to the funds, and the Agreed Order functioned as a kind of "settlement agreement" whereby Craig's recognized its liability to the Bank under the contract. Instead of paying the money directly to the Bank, the Bank made the accommodation that the funds would be deposited in the registry pending Craig's litigation of its state-law claims against the Bank. The money would be released back to Craig's only in the event that Craig's won a judgment against the Bank.

The Agreed Order supports the understanding advanced by Craig's. There are no representations or concessions in this

3

escrow order that the money actually belonged to the Bank.  The Bank's argument that the Agreed Order constituted an enforceable "settlement agreement" fails because the Agreed Order treats these funds as disputed.  For example, on the first page of the Agreed Order, the Bankruptcy Court noted:  "Ordered that on or before Oct. 11, 1996, the Debtor shall deposit . . . into the registry of this Court (the "Court's Registry") $252,440.49, <u>which BOL represents</u> is the sum of the balances that are 90 days or more past due on the credit card accounts as of August 30, 1996."  (Emphasis added).

The Agreement is neutral on the ultimate recipient of the deposited funds, as evidenced by a paragraph providing for disbursement of accumulated interest "upon further order of the court."  Likewise, the order authorizes holding the deposited balance in the registry "pending further order of this Court."  In neither paragraph is there a reference to a settlement agreement or to any certainty as to which party will be entitled to the funds.

Finally, the Agreed Order expressly contemplated and permitted the Bank to assert claims against Craig's — claims that would be unnecessary if the Agreed Order constituted a settlement. On the fifth page of the Agreed Order, the bankruptcy court stated: "ORDERED that leave is hereby granted to BOL to file (I) an amended

4

answer and (ii) a counterclaim against the Debtor in the Adversary Proceeding No. 96-4354."[1]

According to the terms of the Agreed Order, ownership of the money in the court's registry was at all times disputed and the funds were not deposited pursuant to a "settlement agreement."[2] The funds could be disbursed to the Bank only if there had been a judgment on the merits in its favor by a court of competent jurisdiction. After the underlying litigation was dismissed, however, the Bank never filed an independent lawsuit in state or federal court to adjudicate any contractual breach. Craig's may well be liable to the Bank for contract damages; unfortunately for the Bank, no such decision has been made in the course of litigation before a court possessing jurisdiction.

For these reasons, when the underlying litigation was dismissed for lack of jurisdiction, the disputed registry funds should have been disbursed back to the party that deposited them in the registry — Craig's.[3]

---

[1] In fact, the Bank actually re-asserted its breach of contract claim immediately after the Agreed Order was entered by the bankruptcy court. The bankruptcy court ultimately granted relief to both parties on their respective contract claims, concluding that Craig's was entitled to a net recovery against the Bank. This judgment was, of course, subsequently vacated and the adversary proceeding dismissed because the bankruptcy court lacked jurisdiction. See In re Craig's Stores of Texas, Inc., 266 F.3d 388 (5th Cir. 2001).

[2] If Craig's had, indeed, agreed to settle with the Bank, the Agreed Order does not memorialize such a settlement.

[3] The power described in Northwestern Fuel Co. v. Brock, 139 U.S. 216, 11 S. Ct. 523 (1891), and United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795 (1939), "to correct that which has been wrongfully done by virtue of its process," Morgan, 307 U.S. at 197, 59 S. Ct. at 802, is different from the dissent's concept of an equitable power to determine ownership of funds

5

Accordingly, we **REVERSE** the district court's Order Disbursing Funds and **REMAND** with instructions to the district court that the funds be disbursed to Craig's.

**REVERSED AND REMANDED WITH INSTRUCTIONS**.

---

voluntarily placed in the registry of a court lacking jurisdiction. <u>Northwestern Fuel</u> describes the power "to correct by its own order that which, according to the judgment of its appellate court, it had no authority to do in the first instance," 139 U.S. 219, 11 S. Ct. 524; it does not describe an equitable power to determine the merits of property ownership.

In the case before us, there is no order that has been executed under the compulsion of an incorrect or unauthorized court judgment, and thus the inherent equitable power to order restitution for the error does not come into play. <u>See</u> Restatement (First) of Restitution § 74 (1973). No compulsory order stands in need of rectification, remediation or restitution; instead, there is only a sum of money voluntarily deposited by Craig's in the registry of a court lacking jurisdiction. Lacking jurisdiction to receive money into its registry, the district court's authority is limited to returning the money to the depositor — this is the only means by which Craig's original deposit can be "undone," to use the terminology of <u>Northwestern Fuel</u> and <u>Morgan</u>. Because the $252,440.49 belonged only to Craig's Stores when and as it was voluntarily deposited, and the court had no jurisdiction to decide the relative merits of the underlying dispute, it still belongs to Craig's Stores.

We also disagree with the dissent's reading of 28 U.S.C. § 2042. This code section governs the disbursement of registry funds that have languished "for at least five years unclaimed," and have thereby been forfeited to "the Treasury in the name and to the credit of the United States." <u>Id.</u> It is only "such" forgotten funds that the district court, "upon notice to the United States attorney" as representative of the United States, its new nominal owner, is duty-bound under this code section to determine entitlement, upon "full proof of the right thereto." <u>Id.</u> A straightforward reading of this code section indicates that it has a specific and narrow application that is not relevant to this case. Additionally, neither the language of Rule 67 or 28 U.S.C. § 2041 create the statutory duty to disburse funds only to persons judicially determined to be the rightful owners.

6

DENNIS, Circuit Judge, concurring in the decree insofar as it reverses the district court's judgment and remands the case to that court, but otherwise dissenting.

The bankruptcy and district courts were retroactively deprived of bankruptcy jurisdiction by an intervening change-of-law decision by this court. See In re Craig's Stores of Texas, Inc.,266 F.3d 388, 391 (5th Cir. 2001)("adopt[ing a] more exacting theory of post-confirmation bankruptcy jurisdiction."). Nevertheless, in my opinion, the district court continues to have the jurisdiction or inherent judicial power, and the statutory duty, to determine the rightful ownership of funds within its possession and to distribute them accordingly. Consequently, the district court's decision that it did not have authority to make that determination and distribution was based on a legal error. Therefore, I agree that the district court's judgment must be reversed and that the case should be remanded, but I disagree with the majority's peremptory instruction that the district court must distribute the funds to one of the parties without making a determination of whether that party is the rightful owner. The district court should, instead, be instructed to determine rightful ownership and to distribute the funds accordingly pursuant to Federal Rule of Civil Procedure 67 and 28 U.S.C. §§ 2041 and 2042.

The district court has the jurisdiction or inherent judicial power to undo the wrongs done by the bankruptcy court's process and distribute the funds in the court's registry to the rightful owners according to law and equity pertinent to this limited purpose.[4] Anglo-American courts in general, including the Supreme Court and this court, have long held that, after a reversal of a district court's judgment, for either lack of jurisdiction or legal error, the district court has the inherent judicial power, with respect to the parties before it, to distribute funds in its custody, or to order restitution of property wrongly obtained because of its erroneous or void judgment, according to equitable principles.[5]

The right of restitution of what one has lost by the enforcement of a judgment subsequently reversed was recognized from a very early period in the law of England and early in our history by the United Supreme Court.[6]  In <u>Northwestern Fuel Co. v. Brock</u>,[7]

---

[4]     This case is similar to "numerous other cases involving 'jurisdiction to determine jurisdiction' and presenting situations in which the determination of the jurisdictional question involves essentially the same analysis as the determination of the case on the merits." <u>ECEE, Inc. v. FERC</u>, 611 F.2d 554, 555 n.4. (5th Cir. 1980)(citing <u>United States v. United Mine Workers</u>, 330 U.S. 258 (1957); <u>Nestor v. Hershey</u>, 425 F.2d 504 (D.C. Cir. 1969); <u>Means v. Wilson</u>, 383 F. Supp. 378 (D. S.D. 1974), <u>modified</u> <u>on</u> <u>other</u> <u>grounds</u>, 522 F.2d 833, <u>cert. denied</u>, 424 U.S. 958)).

[5]     <u>See,</u> <u>e.g.,</u> <u>Northwestern Fuel Co. v. Brock</u>, 139 U.S. 216, 219 (1891)(citing <u>Mayor v. Cooper</u>, 6 Wall 247, 250; <u>Hornthal v. Collector</u>, 9 Wall. 560, 566; <u>Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan</u>, 111 U.S. 379, 387 (1884)); <u>W.F. Potts Co. v. Coltrane</u>, 59 F.3d 375 (5th Cir. 1932).

[6]     <u>See Northwestern Fuel Co.</u>, 139 U.S. at 219 and 220 (citing <u>Bank of the United States v. Bank of Washington</u>, 6 Pet. 8, 17 and 2 Salk. 587, 588; Tidd, Pr. 936, 1137, 1138).

[7]     139 U.S. 216.

the Supreme Court again recognized that right and further held that, when the judgment of a court of origin is reversed for lack of jurisdiction, that court has the inherent power, to "correct by its own order that, which, according to the judgment of its appellate court, it had no authority to do in the first instance," while the parties are before it and the subject matter of the controversy is in its custody.[8] "Jurisdiction to correct what had been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal."[9] Moreover, the original court has this inherent corrective power even though the mandate of reversal fails to provide for restitution.[10] The Supreme Court explained:

> The gist of the whole complaint is that the reversal by this court being for want of jurisdiction in the Circuit Court. . .that court had no authority to act further in the matter than as directed by the mandate; and that that went only to the reversal of its judgment and the collection of the costs incurred in the appellate court. . . .But here the jurisdiction exercised by the court below was only to correct by its own order, that which, according to the judgment of its appellate court, it had no authority to do in the first instance; and the power is inherent in every court, whilst the subject of controversy is in its custody, and the parties are before it, to undo what it had no authority to do originally, and in which it, therefore, acted erroneously, and to

---

[8]      Id. at 219-220.

[9]      Id.

[10]      Id. at 219.

<u>restore, as far as possible, the parties to their former position.</u>[11]

The inherent power of courts to enforce the right of restitution after appellate reversals discussed by the Supreme Court in <u>Northwestern Fuel Co.</u> is now accepted generally.  For example, the Restatement (First) of Restitution demonstrates that virtually all reported court decisions have adhered to the principles that <u>Northwestern Fuel Co.</u> articulates.  Section 74, which states the right of restitution when a judgment is subsequently reversed, provides: "A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right of restitution of the excess."[12]  Comment b. under § 74 reflects the general view that a court has inherent power to enforce the right of restitution in this situation even when the judgment is void because the court lacked jurisdiction.  It, in pertinent part, states: "The rule is applicable whether the judgment reversed was originally valid or was void."[13]  The reporters' notes to § 74 demonstrate the courts' general reliance on the principles

---

[11]     <u>Id.</u> at 219-20 (emphasis added).

[12]     <u>See</u> RESTATEMENT (FIRST) OF RESTITUTION § 74.

[13]     <u>Id.</u> at cmt. b.

10

of <u>Northwestern Fuel Co.</u>.  Citing <u>Northwestern Fuel Co.</u> and other cases consistently following that decision, they state: "The tribunal reversed can direct restitution on its own initiative."[14] And further that: "An action lies although the judgment reversed was 'void,' the court having power to remedy its own mistake[.]"[15]

In <u>United States v. Morgan</u>[16] the Supreme Court reaffirmed the principles discussed in <u>Northwestern Fuel Co</u>. and held that a district court, to the extent not governed by law or guided by regulatory order, should apply equitable principles in distributing funds in that court's custody resulting from its injunction of the secretary of agriculture's order reducing scheduled rates for stockyard services.[17]  In its opinion, the Court summarized those principles[18] and concluded that, when a court has compelled payments into its registry of amounts which may be found not to have been due, justice requires ultimate distribution of the funds to those

---

[14]     <u>Id.</u> at notes cmt. a.

[15]     <u>Id.</u>

[16]     307 U.S. 183 (1939).

[17]     <u>Id.</u> at 197–98.

[18]     <u>See</u> <u>id.</u> (stating "[i]t is a power 'inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process.'" and citing <u>Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.</u>, 249 U.S. 134 (1919); <u>Northwest Fuel Co.</u>,139 U.S. at 219); <u>id.</u> (stating "[w]hat has been given or paid under the compulsion of a judgment the court will restore when its judgment has been set aside and justice requires restitution." and citing <u>Northwestern Fuel Co.</u>, 139 U.S. at 219; <u>Ex parte Lincoln Gas & Electric Light Co.</u>, 257 U.S. 6, 7 (1921); <u>Baltimore & Ohio Ry. Co. v. United States</u>, 279 U.S. 781, 786 (1929)).

persons entitled to them.[19] "[T]he district court sits as a court of equity," the Court also said, "and...assumes the duty of making dispositions of the fund in conformity to equitable principles."[20] It is also self-evident that a court's inherent power to require restitution of property in a party's possession, rather than in the registry of the court, after a reversal of its erroneous or void judgment, necessarily includes the power after such a reversal to make equitable distribution, to persons entitled to them, of funds on deposit pending the litigation of the parties controversy.

Further, the Supreme Court, in <u>Northwestern Fuel Co.</u> and <u>Morgan</u>, established the procedures and standards to be applied by a district court in making restitution or distribution of funds under equitable principles. In <u>Northwestern Fuel Co.</u> the Court explained:

> We are of opinion that the proceeding to enforce the restitution in the cases mentioned is under the control of the court, and that all needed inquiry can be had to guide its judgment in a <u>summary proceeding</u>, upon motion of the parties; <u>the only requisite being that the opposite part[y] shall be heard</u>, so that in directing restitution no further wrong be committed. <u>The restitution is not made to depend at all upon the question whether or not the court rendering the judgment reversed acted within or without its jurisdiction</u>.[21]

---

[19]     <u>Id.</u> at 198.

[20]     <u>Id.</u> at 191.

[21]     139 U.S. at 220.(emphasis added).

12

In Morgan, the Court stated that the district court, "[i]n taking the payments into custody...acted as a court of equity, charged both with...the responsibility of protecting [and] disposing of it according to law, and free in the discharge of that duty to use broad discretion in the exercise of its powers...to avoid an unjust or unlawful result."[22]  The Morgan Court recognized that a district court is not bound by any contract or understanding with the litigants; its duty is in distributing the funds in its custody as "prescribed by the applicable principles of law and equity[.]"[23]

The Fifth Circuit, in W. F. Potts & Co. v. Cochrane,[24] applying the Northwestern Fuel Co. principle,[25] approved of a district court's undoing of its erroneous assertion of jurisdiction in taking custody of property and appointing a receiver,[26] but disapproved of that court's decision in making restitution because it was "not in accordance with the equitable principles applicable in the case."[27] In Potts, this court indicated that, under Northwestern Fuel Co., "the District Court should have...fully canvassed the situation from the standpoint of determining where the equities lay to adjudge

_____

[22]    307 U.S. at 193-94.

[23]    Id. at 194.

[24]    59 F.2d 375.

[25]    Id. at 377 (citing, *inter alia*, Northwestern Fuel Co., 139 U.S. 216; Arkadelphia Milling Co., 249 U.S. 134; Baltimore & Ohio R. Co., 279 U.S. 781).

[26]    W.F. Potts, 59 F.2d at 377 ("[T]he appointment of a receiver is at last the court's appointment; the administration, its administration.").

[27]    Id.

13

accordingly.  Such a proceeding is purely equitable; it should have been decided upon equitable grounds."[28]

In direct conflict with the foregoing Supreme Court precedents, the majority follows a rule of its own creation, viz., that "disputed registry funds should [be] disbursed back to the party that deposited them in the registry" when it is later determined that the depositary court lacked subject matter jurisdiction. However, the majority not only fails to cite any authority for its rule, it does not even attempt to reconcile the rule with the duty imposed on depositary courts' to decide claims to registry funds on equitable grounds by the Supreme Court decisions, Rule 67 and 28 U.S.C. §§ 2041 and 2042.

Under the principles articulated by the Supreme Court in Northwestern Fuel and other decisions, the district court has inherent power to undo any wrong done by the bankruptcy court's decree which, unknowingly without jurisdiction, consented to adjudicate the parties' claims over disputed funds to be deposited in court pending the outcome of its decision; and the district court has the power to distribute the funds in its custody according to equitable principles, including those provided by 28 U.S.C. §§ 2041 & 2042 for deposits in court, in such manner as to avoid an unlawful, unjust or inequitable result.  Consequently, I believe that both the majority and the district court here are in error in

---

[28]     Id. at 378.

14

failing to recognize the district court's judicial power and duty to undo any wrong done by the bankruptcy court's process and to distribute the funds in accordance with 28 U.S.C. §§ 2041-2042 and equitable principles.

Of course, as the Supreme Court's cases make clear, this does not mean that the district court should adjudicate the civil action or review the bankruptcy court's decision on the merits. Instead, pursuant to Rule 67 and 28 U.S.C. §§ 2041-2042, the district court, and not this court, must determine rightful ownership of the funds and disburse the funds to the owner.

Under Rule 67, the disbursement of funds is governed by 28 U.S.C. §§ 2041 and 2042; these statutory provisions assign the power and duty of approving disbursements exclusively to the depositary court; and §§ 2041 & 2042 require that the depositary court disburse the funds only to persons judicially determined to be rightful owners. The purpose of a deposit under Rule 67 is to relieve the depositor of responsibility for the money or thing in dispute while the parties litigate their differences with respect to the res.[29]

Once the deposit is made, the funds can be withdrawn only by order of the depositary court. Rule 67 specifically states that 28 U.S.C. §§ 2041 and 2042 provide the rules that must be followed by

---

[29] <u>Cajun Elec. Power Coop. Inc. v. Riley Stoker Corp.</u>, 901 F.2d 441, 444 (5th Cir. 1990). Once the deposit is made, the depositor is no longer liable for interest on the fund. <u>See</u> 13 MOORE'S FED. PRAC. 3D § 67.03 (citing authorities).

15

the court and the parties with respect to orders of withdrawal or disbursement. "Money paid into court under [Rule 67] must be deposited and withdrawn in accordance with the provisions of Title 28, U.S.C., §§ 2041 and 2042...or any like statute."[30] Funds deposited in court are held only for those persons judicially found by the court to be entitled to them as rightful owners.[31] The burden is on the claimant to establish his right to withdraw money deposited with the court.[32] The right to recover from a fund deposited in court must be based on the strength of the title of the claimant and not on the weakness of the title or another claimant.[33] Rule 67 providing for deposit in court, generally, continues in effect similar special provisions contained in statutes and rules pertaining to bills of interpleader, bills in the nature of

---

[30]     FED. R. CIV. P. 67.

[31]     See 12 WRIGHT & MILLER, FED. PRAC. & PROC. § 2992.  Title 28, U.S.C. § 2041 provides, in relevant part, that "[a]ll moneys paid into any court of the United States. . .in any case pending or adjudicated in such court, shall be deposited with the Treasurer of the United States or a designated depositary. . . .[t]his section shall not prevent delivery to the rightful owners upon security, according to agreement of parties, under the direction of the court." Section 2042 also provides, in relevant part,  that "[n]o money deposited under section 2041 of this title shall be withdrawn except by order of court.  In every case in which the right to withdraw has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause the money to be deposited in the Treasury. . . .[a]ny claimant entitled to any such money may, on petition to the court...and full proof of the right thereto, obtain an order directing payment to him."

[32]     Hansen v. United States, 340 F.2d. 142, 144 (8th Cir. 1965); United States v. Beach, 113 F.3d 188, 191 (11th Cir. 1997)(citing United States v. Kim, 870 F.2d 81, 84-85 (2d Cir. 1989)(applying preponderance of the evidence standard).

[33]     United States ex. rel. Home Indem. Co. v. Am. Employers' Ins. Co., 192 F. Supp. 873, 876 (D. N.D. 1961)(citing United States v. Chapman, 281 F.2d 862, 867 (10th Cir. 1960)).

16

interpleader, and admiralty.[34]   Proceedings for disbursement of funds deposited in court are equitable in nature and in the nature of interpleader.[35]

Here, the district court disregarded or was unaware of its duty under 28 U.S.C. §§ 2041 and 2042 to determine the persons who were entitled to the funds on deposit and to disburse them only to the rightful owners.  The district court did not take evidence on or inquire into rightful ownership in accordance with 28 U.S.C. §§ 2041 and 2042.  Instead, the district court acted as if it had no jurisdiction to inquire into equitable entitlement and summarily, without giving any clear reasons, disbursed the funds first to Craig's, but, after reversing itself, to BOL.  Consequently, the district court did not perform its duty under §§ 2041 and 2042 to determine the rightful owner of the deposited funds by a preponderance of the evidence before delivering them.

Furthermore, 28 U.S.C. §§ 2041 and 2042 provide that funds deposited in court may be disbursed only by order of the depositary court to persons judicially determined to be entitled to them.[36] Appellate courts are not vested with original jurisdiction,

_____

[34]    See 13 MOORE'S FED. PRAC. & PROC.  § 67 App.01 (citing former statutes, admiralty rules, and committee note.)

[35]    See, e.g., United States v. Beach, 113 F.3d at 191 (quoting United States v. $17,400 In Currency, 524 F.2d 1105, 1108 (10th Cir. 1975) (Doyle, J., dissenting) (describing petition for withdrawal of funds pursuant to 28 U.S.C. § 2042 as "[b]eing in the nature of an interpleader action")).

[36]    See 28 U.S.C. § 2041-42.

17

authorized by rule or law to make this determination, or permitted to render disbursement orders. Hence, the majority has fallen into error by instructing the district court to disburse the funds to Craig's without first making a determination under Rule 67 and §§ 2041 & 2042 of who is the rightful owner of the money.

Besides, as a purely practical matter, this court is ill-equipped to perform this function since we cannot easily inquire into or elicit evidence on the pertinent issues. That is especially so in the present case. The district court and the parties did not proceed to inquire into rightful ownership under Rule 67 and §§ 2041 and 2042; apparently they were unaware of these provisions or mistakenly thought the district court lacked judicial power to determine rightful ownership. Therefore, the present record does not contain sufficient evidence on these issues to enable us to decide them initially, even if it were permissible for us to do so. Accordingly, I would vacate the district court's judgment and remand the case to the depositary court for it to determine how the funds on deposit shall be distributed according to 28 U.S.C. §§ 2041 and 2042.

Ultimately, the majority's disposition of this case does not comply with law, equity or justice and does not return the parties to their original positions. As the majority notes, "ownership of the money in the court's registry was at all times disputed. . .

18

."[37]  Thus, the majority's transfer of all of the funds to Craig's simply because Craig's initially deposited most of the funds into court overlooks the basic fact that neither party had a clear right to the money.  Instead, both parties had claims to the money and this is reason that the funds had been deposited into court.

The majority's peremptory transfer of funds to Craig's also disregards the significant changes in position by BOL in consideration of the deposit and the parties' agreement to litigate over the money within the court's registry.  Before the parties agreed to the consent decree establishing ground rules for the bankruptcy court's adjudication of their claims, Craig's had possession of most of the funds, but BOL had several viable claims or actions against Craig's, *i.e.*, an objection to the bankruptcy court's jurisdiction, an injunction action against Craig's, a counterclaim against Craig's, and a claim to have the proceedings converted to a Chapter 7 proceeding.

The bankruptcy court, upon agreement of the parties, entered a consent decree which provided, *inter alia*, that (1) Craig's shall deposit and the clerk shall accept into the registry of the court $251,440.40 being the funds in dispute; (and BOL was later required to deposit $10,058 into the court) (2) the adversary proceedings were consolidated; (3) BOL's objection to the bankruptcy court's jurisdiction was withdrawn; (4) BOL's motion to convert Craig's

---

[37]    Maj. Op. at 5.

bankruptcy proceeding to a Chapter 7 proceeding was withdrawn; (5) BOL allowed its injunction action become moot; (6) BOL was allowed to file its counterclaim; and,(7) the parties stipulated that the deposited funds would remain in the court's registry pending their litigation over the deposit and the bankruptcy court's adjudication of their claims.  Thus, both parties significantly changed their positions and gave and received benefits from their agreement to litigate over the disputed funds deposited in the bankruptcy court.

The bankruptcy court adjudicated the claims pursuant to the parties' agreement, which it had approved.  But the bankruptcy court's decision and judgment were voided by the decision of this court that the bankruptcy court did not have jurisdiction to decide the civil action on the merits.  The purpose of the parties' agreement, to submit their claims against the disputed funds adjudicated by the bankruptcy court, was frustrated and its full performance made impossible by the jurisprudential development that deprived the bankruptcy court of jurisdiction.

Consequently, a disbursement of the funds to Craig's free and clear of BOL's claims, without compensating BOL for the loss of its claims against the funds and against Craig's personally will unjustly enrich Craig's and be detrimental to BOL.  BOL will suffer the unjust penalty and hardship of being deprived of its claims to ownership of the funds without a hearing.  The result will be highly

20

inequitable and will not return the parties to their former positions.

For all of these reasons, this case should be remanded to the district court with instructions that it perform its statutory duty under Rule 27 and 28 U.S.C. §§ 2041 and 2042, to determine rightful ownership of the funds in the court's registry and distribute those funds accordingly.